And we have one last case for argument this morning, United States v. Hamilton. Good morning. May it please the Court. Evgeny Parkman from the Office of the Federal Public Defender for the Appellant, Robert Hamilton. I'd like to reserve three minutes for rebuttal, please, and I'll keep nine o'clock. Mr. Hamilton's rights were violated at every stage of this federal prosecution. The case began with an unlawful arrest by San Francisco police officers. He was convicted on the back of a jury instruction that vouched for those officers, and he was sentenced for conduct of which he was acquitted and did not commit. This Court must reverse. I'll start with the unlawful arrest. Nine officers descended on Mr. Hamilton to arrest him for a shooting that had occurred about two weeks earlier. At what point do you think the arrest started? I would say there's a good argument the arrest started at the point at which he was tripped, but as the argument has been developed, it was at least at the point at which he was brought to the ground. Now, the government has come up with a new argument at the Court of Appeals, the Terry analysis. They didn't raise the Terry analysis or argument at the trial level, but here they have. So, tell me why this is or is not Terry. Okay. So, first, the government didn't raise it, so we think the rule of waiver applies either under Rule 12 or just generally. And even on appeal, the government hasn't engaged with the test for what is a brief Terry seizure versus a full-blown arrest. And that test is whether a reasonable person in those circumstances would expect to be free to leave after a brief questioning. And here, where the encounter began with an officer asserting there's a warrant for Mr. Hamilton's arrest and then continued to be taken down, handcuffed, feet tied, guns drawn, all that officers did, that reasonable person would expect to be free to leave after brief questioning. As the district court analyzed it, the officers did not have probable cause at the time they approached Mr. Hamilton. They certainly didn't have a warrant. And it held that the officer's investigation into that shooting did not support a probable cause for his arrest. We're on de novo review, right? So, we could disagree with that and conclude that they did have probable cause when they first got out of the car. That's correct. But the evidence here does not support probable cause. The district court reviewed the video evidence and found that it did not support, it was very weak evidence that Mr. Hamilton was in any of these videos. And I think that that is a factual finding that is entitled to significant deference on appeal. And so, with that, there is not sufficient evidence of Mr. Hamilton's involvement. His connection with, there's no evidence he was on the scene, and his connection with the car was very tenuous, much more tenuous, I submit, than in Lopez, where the court also did not find probable cause. Well, let's just start with the premise that all they had was reasonable suspicion to stop him and talk to him when they first initiate contact. Why doesn't his running give them more? So, running is ambiguous conduct that it may happen for many reasons. Some of those reasons are innocent. Some of those reasons are suspicious. And that's why it's often important in reasonable suspicion analysis about whether there's criminal activity going on right now. But it is far less relevant and far less probative when the issue is probable cause for a specific crime occurring in a different place and in a different time period. Well, I thought about the running part, too, and I was thinking, well, maybe that is enough. Maybe that adds to the PC for this particular contact. But when I looked at the case that underlines the running, it was unprovoked running. It was someone who saw a number of officers without any provocation and then started running. Here, is this similar to that situation? No, I think that's a very good distinction that here Mr. Hamilton had good reason to believe that the officers were trying to arrest him. And so he was running from that arrest. Why did they have good reason? Why did he believe that they were trying to arrest him? Because Officer Juarez began the interaction with Robby Hamilton, there's a warrant for your arrest. And that's a critical fact in the analysis from your standpoint, is that right? Absolutely. It's critical to whether he was arrested versus stopped. And it's also critical to an additional argument that we made, which is that even if the running and the, after he was stripped the clutching, could have contributed to probable cause. It was still error for the district court to consider those two factors. One more argument, which is that the argument began with a question about when the arrest happened. If the arrest did happen at the point he was stripped, then actually the court could not consider the clutching because that was the product of a trip and followed after the arrest. But to return to the initial argument, which is it was certainly the product of Officer Juarez claiming that there is a warrant for Mr. Hamilton's arrest. And what that does is it invokes the authority of the judiciary to actually arrest Mr. Hamilton to encumber his liberty. And it conveys to Mr. Hamilton that a neutral and detached magistrate actually approved what the officers were doing that day. But our law doesn't say that officers have to be completely honest with suspects. They're allowed to be deceitful in certain circumstances. And as I read those cases, the limits on an officer being deceitful have to do with are they playing on some sort of trust relationship that is happening between them and the person involved? Or are they gaining additional access by the use of deceit that they otherwise couldn't get? And I don't see either of those things happening here. There was no trust reliance between Mr. Hamilton or Mr. Hamilton was having on these officers. He sees them and he bolts. There's no additional access that this statement about a warrant is giving the officers because they already had sufficient reason to at least conduct a Terry stop. So why should we care? Assuming we agree that the statement about a warrant was a lie as opposed to an error, why should we care about it in our in the analysis here? So I think it actually does do both those things the court identified. First, it is it undermines public trust in what the officers say, because if an officer will say that that would be true with any time an officer is untruthful, undermining public trust. And yet our cases don't draw the line and say, you can never do this, right? Otherwise, you would never have undercover operations. And so it matters that officers were not undercover. And that that Ramirez talks about that, that an important factor is whether the officer is presenting himself as a government agent or herself. And in this case, that was clearly the case. And the there's in Ramirez, the way to get at that issue is to balance the government interests in the misrepresentation. It has to be just either an affirmative or deliberate misrepresentation. We submit this is at least an affirmative misrepresentation and the individual interests. And here, when an officer is invoking the authority of the judiciary, that does undermine. It makes it so people who are stopped and are told that there's a warrant for their. That's an important point, I think, in my mind, invoking the judiciary, because that's what the officer was doing. They say we have a warrant. That's different than, hey, I want to talk to you or make up any other lie. We have a warrant, meaning a judge has approved this document that authorizes to arrest you and come toward us. That is an important difference, don't you think? Absolutely. Sure. And that's what judgment. It's a verifiable fact. This would be a different case in your mind if the officer had said, I have probable cause to arrest you. Stop. I think so, Your Honor. I think at that point, his that's not the kind of affirmative misrepresentation that is verifiable that undermines public trust in what the officers say. It's exactly as Judge Mendoza identified that it's invoking a neutral and detached magistrate who ostensibly approved what the officers are doing, which is not true. It individes the kind of gamesmanship that I identified before, where officers who might have probable cause may not go and say that we have a warrant for your arrest and see what happens. Do you have a case that draws any sort of line like that? I think Ramirez is what talks about that. It matters if it's something that can be used to gain further access, which is what happened here. It went from... What's the further access that he... Because like I said, they already had suspicion that would have justified making him stop and talk to them. So what is the further access? Under the district court's analysis, it went from just suspicion to stop and talk to him to because they made this representation and then he ran, and then he clutched his waistband after he was stripped, that that got him over the line to permit... Well, he wasn't stripped. The officer testified that he hit him in the knee and in the cap, meaning he kicked him. So are we going to allow officers when they have reasonable suspicions to physically assault individuals when they have some reasonable belief of the person committing a crime two the amount of force used. But I was referring to an earlier... So earlier in the encounter, so Mr. Hamilton responds to that there's a warrant for your arrest by running and there's Officer Naval is initially running towards him and trips him and he falls. And then after he gets up and keeps running, that's where he's grabbing his waistband and his pants are falling off. After that, he's kicked as the court described, and it's taken down. So if you look at the Terry analysis, they may have had, let's assume for a moment that they had reasonable suspicion to stop him and question him. That didn't happen. It seems to me that one could argue that the Terry stop never took place because once you talk about there's a warrant for your arrest, then immediately steps are taken to take him down and arrest him. Agree or disagree? That's 100% right. So the test is exactly as the court laid out, whether a reasonable person in those circumstances would believe that he is briefly detained or not briefly detained for longer than a brief time period permitted under Terry. And here, once the encounter began with there's a warrant for your arrest and made very clear that the officers are attempting to arrest Mr. Hamilton, that that takes it out of the land of Terry and explains why the government has never argued until appeal that this is a Terry stop. As it was argued in the district court, it was always about probable cause for arrest. And the debate there was whether it was based, whether his additional actions after this false claim of the arrest warrant created the additional cause. And I think Wong Sun versus United States is very important on the facts here because it fleeing and reaching are. There, the officers suspected the proprietor of a laundromat on Leavenworth Street of selling heroin. That was based on an informant who they followed for six weeks and was arrested with heroin on him, saying that that's where I got it the night before. They go to the laundromat, they knock on the door. After a brief conversation, the officer pulls out a warrant and says, I'm a federal narcotics officer. And the proprietor slams the door and runs. And he's apprehended as he's reaching into a drawer. And the Supreme Court said that those actions are ambiguous. They are not sufficient to corroborate your preexisting suspicion, which was not enough for probable cause that the proprietor is selling heroin. Good morning. May it please the Court. My name is Evan Matir, and I'm here on behalf of the United States. Because the panel's questions are focused on the Fourth Amendment issue, that's what I'm going to focus on. Also, if you have questions on the other issues, please let me know. Before your argument is over, I would like to address the jury instruction issue as well. Yes, Your Honor. Then we'll address both of those. Beginning with the Fourth Amendment issue, the touchstone of the Fourth Amendment analysis is reasonableness. And this stop was reasonable suspicion to stop Mr. Hamilton in an execution. The only question that Mr. Hamilton's raised is whether or not a single erroneous statement regarding whether there was a warrant renders the entire stop, taking the totality of circumstances into effect, to be unreasonable. And it doesn't. The first point that I want to emphasize is that the district court made a specific finding. This statement was erroneous. It wasn't an affirmative misstatement. It wasn't an attempt to run a ruse. It wasn't an attempt— You're arguing Terry now, correct? You're arguing—at the Court of Appeals, you're arguing that this was a Terry stop. Is that accurate? They had reasonable suspicion to stop him under Terry, yes, Your Honor. And you didn't make that argument at the district court level. You argued that you had probable cause, correct? So, Your Honor, at the district court level, we made two arguments. The first is that the investigation prior to the encounter gave probable cause to arrest. The second was that that investigation, plus his reaction to the officer's attempt to stop him, also gave probable cause to arrest. Implicit in that is that they— Well, you're not answering my question. My question is whether or not you made the Terry argument at the district court level. We could consider your new argument, but I just want to make sure that I understand what you did argue at the district court and at the Court of Appeals. You didn't make the Terry argument at the district court, did you? No. I think our two arguments were the probable cause arguments. I do think that the arguments about Terry are implicit in that second argument about probable cause. So, what good cause do you have under our current federal court rule of civil procedure 12C3 that requires good cause for us to consider this new argument? Well, Your Honor, I guess that's what I'm trying to say. I think that it was implicit in the second argument that we made at the district court. The district court then analyzed the reasonable suspicion of the Terry analysis in their order. And so, I think this court can consider it in its authority to affirm on any basis that's supported by the record. Thank you. So, Your Honor, I was emphasizing that the district court had made a factual finding. The statement was erroneous. It wasn't an affirmative misstatement. And I think that that's really critical because it distinguishes this case from the other cases where the Ninth In those cases, as Your Honor emphasized, a couple of factors are present. First, there's an affirmative misstatement, usually a ruse, that's leveraging the public's trust in law enforcement in order to ascertain the cooperation of the defendant. I'm sorry, Judge. No, I was just going to say, so we have to start to analyze when a law enforcement officer says something like, we have a warrant for your arrest, whether they made a mistake or whether they intended to do it, and all that. That's part of what we have to do? Your Honor, I think it's relevant in doing the Fourth Amendment balancing that this court has said is necessary to determine whether or not a search is reasonable or not. Well, but to determine whether or not a person feels that they are free to leave, what does that matter, whether the subjective or mistaken belief of the officer is? Don't we look at what the person who's receiving that information is? Isn't that the analysis that we look at? Your Honor, that's the analysis for determining whether or not a person has been detained or not, but I don't think that's the analysis for whether or not the officers acted reasonably within the Fourth Amendment. For whether they acted reasonably within the Fourth Amendment, this court has said that the Fourth Amendment interests at stake are at their highest when the government is leveraging their position as the government, the trust in them as the government, in order to gain additional Fourth Amendment access. And that's why it's important, Your Honor, whether or not they did in fact run a ruse here where they said, we have a warrant in order to provoke somebody to run. Didn't the supervising officer say, go out and get prepared to arrest him? Wasn't that part of the instruction? Yes, Your Honor. Their intention that day was to go and arrest Mr. Hamilton, but that still is different from the cases where officers have gone out with the intent of misleading a suspect into taking some action, usually giving them consensual access to an area that they otherwise didn't have authority to get access to. In this case, the analogy would be if they had intended to make a misstatement to stop him. They didn't need to do that. They already had all the authority they needed in order to stop Mr. Hamilton. They didn't gain additional access by the fact that he took off running. And that distinguishes this from the cases where the court has found a stop to be on how officers can interpret flight contradict this court's findings in cases such as Smith that have made it very clear that as part of the totality of the circumstances, officers can consider flight and that flight is indicative of wrongdoing. Unprovoked flight, though, I thought. Is it not unprovoked flight? And if it's not, please cite me a case. So, Your Honor, unprovoked flight is the words used in the case law, but I think that it's helpful to look at the specific facts of what unprovoked flight means. So in Smith, the officer... Let me ask you this. Here, you would concede that this was provoked flight because, one, they told him, come here, number one. Number two, they told him, we have a warrant for your arrest. That's provoked, wouldn't you say? Well, I think it's very similar to what happened in Smith, Your Honor. In Smith, the officers told, ordered somebody, stop, come here, stop. They had no reasonable suspicion, the court found at that point, to do a Terry stop, even, to tell that person to stop. So they were telling them, they were invoking their authority to tell them to stop. Would that person then engage in flight in reaction to being told that they were being told to stop? But did they tell him they had a warrant in Smith? No, Your Honor. That's distinguishable, correct? Because here, it's very different when you're invoking the judicial branch. You're saying, we have an order of this court. We have an order saying, you come here, you stop. Isn't that different? I don't think it really is different, Your Honor. I think that it still gets to whether or not running from the officer who's trying to stop you is suggesting wrongdoing. And I think that Supreme Court and this court have both suggested that in this sort of circumstance, it does, and that's what the district court had found. But if there was no, let's assume for the moment, and I know this is contrary to one of your arguments, but assume that there was no probable cause at that point when they spoke to him, say that maybe they had enough for a Terry, but there was not probable cause. And you say to him, I've got a warrant for your arrest, and he starts to run. Does that give you you claim that gives you probable cause to conclude that he committed this crime? That's an issue here. Yes, Your Honor. I think that that's right. That's what the district court found, and that's what we think is an appropriate analysis. But district courts went through more complex analysis, but go ahead. Well, yes. So, Your Honor, it's everything that they knew from the investigation leading up to that encounter. So, it's the connections that Mr. Hamilton has specifically to this shooting, which gave them the reasonable suspicion in the first place. It's that plus, one, the fact that he ran, and two, that while running, he ran to his reach towards his waistband, suggesting to several officers that he had a firearm. And then third, I think the court also mentioned that this was in a high crime area. So, it's all of those factors together, the totality of the circumstances that gave him the probable cause to make the arrest, Your Honor. Would you address the jury instruction issue? Absolutely, Your Honor. So, with respect to the jury instructions, Mr. Hamilton agreed at trial that a jury instruction was necessary on this issue of the search in order to avoid confusion of the jury. And the reason why there was going to be potential confusion is because, by Mr. Hamilton's request and argument, all of the discussion of why the officers were approaching Mr. Hamilton that day was excluded, and so the jury was getting half of the story. At trial, Mr. Hamilton never said, or claimed, or explained that he believed that this instruction was going to preclude his defense that the gun had been planted. He, in fact, during trial, leveraged the instruction to, again, try to prevent additional questioning about why officers were approaching Mr. Hamilton on the day that he was arrested. And in any case, it did not preclude him from presenting his defense, and his defense had no evidentiary basis. It was based only on speculation, which is also what the district court found. And so, the argument just, I think, fails at every level. In denying the motion for a new trial, the district judge, in addressing that issue, said, quote, the issue of planting the gun was never mentioned as a reason to modify the instruction that was being challenged. That's right, Your Honor. What do we do with that? Like, how much weight or deference do we give that kind of a statement? I think it should deserve substantial deference, Your Honor, because it goes to what the district court understood, why the district court was choosing to word the instructions in the way that it did, and that decision about how to precisely word an instruction that both parties otherwise agree should be given, that's a decision that is granted substantial deference by this court. I guess maybe another way to ask it is, does the fact that the district court judge said that make us on plain error review? Oh, I see, Your Honor, and I'm sorry I misunderstood your question. Yes, I believe at a minimum this is on plain error review because that particular claim about precluding the defense was never raised in any way to the district court. This was only raised for the first time on appeal. And so that argument was not preserved at the trial court. And Mr. Hamilton cannot succeed on plain error review. First, he is not, well, first, as I already outlined, there was no error. This instruction did not prevent him from presenting a defense, and it did not prevent the jury from considering his defense. I understand your argument there. Let's just look at a portion of the instruction, the portion which says you also may not speculate as to whether police had any improper motives in arresting a certain defendant on February 27, 2021. Couldn't that be read, say you can't think about or speculate as to whether they planted stuff on him or not? So, Your Honor, I don't think that that's a reasonable reading of this sentence. I think that for a couple reasons. First, because the subject matter is specifically arresting or to these two facts, not whether they did anything else but the arrest or the search. But more importantly, because it's limited to speculation, and speculation, as covered by the model jury instructions that were also given to the jury, speculation is not a basis for reasonable doubt. Evidence is, and the jury instructions also instructed them to consider all of the evidence. And so had there been evidence of improper motives, then this jury instruction does nothing to stop a reasonable juror from considering that evidence. The problem for Mr. Hamilton's case was there was no evidence of planting for the jury to consider. All there was was speculation. So I got to say the jury instruction here is unusual and a little troubling to me. But what I've been wrestling with, that same reference that Judge Oliver just quoted, in the defendant's version of the instruction that the court opted not to give, it has a similar statement, quote, it's not for you to consider or speculate whether any evidence presented to you or was obtained improperly or in violation of law. So slightly different because it doesn't use the word motives, but sort of getting to the same idea. You're not supposed to speculate about whether the police acted wrongly. So given that he proposed his own version with somewhat similar language, what would be the prejudice to him? Yes, Your Honor, I agree. I agree that these they have, I think, almost very similar or identical effects with respect to what Mr. Hamilton's saying his potential issue was. And I think that this is relevant at a few different points in the analysis, but one of them is on plain error review, whether or not this was a harmless error to the extent that there was any error. And I think that this does show that there was no prejudice because had the court given his own version of the instruction, the same issues that he complains of now on appeal with respect to the instruction that the court did give, they all still apply. Now, again, I don't think that they are actually issues to the extent that I don't think that this did preclude his defense or vouch for officers. I think it's also relevant because it would be invited error given that the same his instruction has the same impact on the proceedings. Yeah, very quickly. Yes, Your Honor. You say the judge says essentially that he never objected. He was in a colloquy during the motion to eliminate where he suggested one instruction as opposed to another. And it seemed like he was pretty clear, perhaps that he was objecting, but I assume that wasn't sufficient. There are times that he appeared to object later, but maybe they were too late. He was at the sidebar. He was reading out his own instruction. I would take that to mean to the judge, I think you ought to give mine now and not that one. That could be read as lodging an objection. Yes, Your Honor. So he did reread his proposed instruction later at the later point in trial. But the rule says that the specific grounds for the objection needs to be made, not just proposing alternative instructions, just rereading the alternative instruction that doesn't preserve the objection. And so the only time any particular basis was given for why one instruction should be given from another is when the proposed jury instructions were made. That never mentioned vouching. It never mentioned at all anything about precluding a defense. And because of that, that objection was not preserved. I see that my time is running out, so if there are no further questions, the United States asks that you affirm Mr. Hamilton's conviction and sentence. Thank you, counsel. Thank you. Your Honors, I have two quick points about the arrest, then I'll address the jury instruction. First, the Fourth Amendment encourages officers, where practicable, to get a warrant rather than just say they did and not get one. And that's what happened here. It's exactly invoking the authority of the judiciary that attempts to get people's compliance in a way that just an officer's order does not. That is the problem here. Second is the fleeing. And the reason that fleeing is shows a guilty conscience about what's particularly going on, that there's some kind of criminal activity going on right now. Here, the court can't ignore the race of Mr. Hamilton, that he's a young black man and he may want to avoid an encounter with the police because of the news of brutality by the police against young black men around that time. And second, even if there is, there could be innocent reasons, there could be suspicious reasons, but even if there's suspicious reasons, there's no nexus to the shooting, which is what the district court tried to tie this fleeing to, which is the problem if we're using it towards probable cause analysis. Next, I'll address the jury instruction. This dispute instruction went to the exact time period that was critical to Mr. Hamilton's defense, which is when the arrest and the search happened. And specifically, it went to whether it was reasonable for the jury to when the officers planted the gun. And the instruction was first, it was an affirmative statement that the evidence was obtained legally. That's a very broad statement untethered to the Fourth Amendment. And it was followed by a prohibition that you may not speculate whether the police acted with an improper motive. So that's the difference between the defense instruction and the government's instruction, because the combination of the affirmative statement followed by the prohibition is to convey to the listener that the officers did not act with improper motive because they obtained the evidence legally. And that's exactly the concern that Mr. Hamilton raised to the court when he said that this instruction lends an official imprimatur and judicial stamp of approval on every action taken during the arrest, because his defense was one of those actions was that they planted the gun. And all he had to do was to take a position and get a ruling from the district court. And that's what happened. So the instruction is because the government has not shown that it's harmless, it must lead to reversal. So I ask the court to reverse the conviction or at minimum remand for resentencing. Can I just ask one question? This instruction that's an issue was also included in the final jury instructions? Was the instruction that the judge gave earlier on in the case, was it also included in the final jury instructions? It was, Your Honor. And was there an objection large at that time? Yes, before. So when the court issued its proposed final jury instruction, that's where counsel objected to the instruction, read the alternative instruction. And the court at that point said he didn't say that, oh, you waived this issue or anything of the kind. It said that I already ruled on this in the beginning and I'm just going to your objection is futile because I've already read this twice. I thought that was in the middle of the trial. No. So the instruction was given three times. That particular colloquy happened in discussion before the final jury instructions were given. All right. Thank you, counsel, for your arguments. The matter of United States versus Hamilton is submitted. And that concludes our docket for the day and our calendar for the week. I'll rise.
judges: FORREST, MENDOZA, Oliver